**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

| | | |
|---|---|---|
| **RICHARD B.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Case No. 1:25-cv-00398** |
| | : | **Judge Jeffery P. Hopkins** |
| | : | **Magistrate Judge S. Courter M. Shimeall** |
| **COMMISSIONER OF** | : | |
| **SOCIAL SECURITY,** | : | |
| | : | |
| **Defendant.** | : | |

**<u>REPORT AND RECOMMENDATION</u>**

Plaintiff, Richard B., brings this action under 42 U.S.C. § 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for social security disability insurance benefits ("DIB") and supplemental security income ("SSI").  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 9).  For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I. PROCEDURAL HISTORY

Plaintiff filed his applications for DIB and SSI on April 4, 2022, alleging disability as of February 28, 2020, due to Type II diabetes, hypertension, alcoholic cirrhosis, anxiety, depression, arthritis, sleep apnea, and neuropathy in bilateral feet.  (ECF No. 7-6, PageID # 368).  Plaintiff's applications were denied initially and upon reconsideration.  (ECF No. 7-3, PageID ## 93–97, 106–

1

14). Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). (ECF No. 7-4, PageID ## 170–71). The ALJ heard the matter on April 10, 2024, and on May 14, 2024, issued a decision finding that Plaintiff was not disabled. (ECF No. 7-2, ## PageID 34–56, 57–89).

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2025, and applied the five-step sequential process to evaluate his DIB and SSI applications.[1] (ECF No. 7-2, PageID # 39).

- Step One: The ALJ found that Plaintiff had not engaged in substantial gainful activity since February 28, 2020, the alleged onset date. (*Id.*).

- Step Two: The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, degenerative joint disease of the right knee, osteoarthritis of the left knee, hernia status post repair, diabetes mellitus with neuropathy and mild retinopathy, and obesity. (*Id.* at PageID ## 39–40). The ALJ further found that Plaintiff's medically determinable mental impairments did not cause more than minimal limitation in his ability to perform basic mental work activities and are, therefore, nonsevere. (*Id.* at PageID # 42).

- Step Three: The ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.* at PageID # 43).

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

2

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> [Plaintiff] has the residual functional capacity to perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b), subject to the following limitations: (1) occasionally climbing ramps and stairs, balancing (as defined in the Selected Characteristics of Occupations (SCO)), stooping, kneeling, crouching, and crawling; (2) never climbing ladders, ropes, or scaffolds; (3) avoid all exposure to unprotected heights, dangerous moving machinery, and commercial driving.

(ECF No. 7-2, PageID # 44).

- Step Four: Relying on the vocational expert's ("VE") testimony, the ALJ determined that Plaintiff was unable to perform his past relevant work as a fast food cook. (*Id.* at PageID # 48).
- Step Five: The ALJ considered Plaintiff's age, education, work experience, and residual functional capacity, along with the VE's testimony, and found that Plaintiff had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy such as a cook, short order. (*Id.* at PageID ## 49–50).

The ALJ therefore concluded that Plaintiff was not under a disability since February 28, 2020. (*Id.* at PageID # 50).

The Appeals Council denied Plaintiff's request for review, and this matter is properly before this Court. (*Id.* at PageID ## 23–28). Plaintiff now brings this action for review. (ECF No. 1).

## II.     RELEVANT RECORD EVIDENCE

The Undersigned has reviewed the portions of the administrative record relevant to the claimed errors raised by Plaintiff. Rather than summarizing that information here, the Undersigned will refer and cite to it as necessary in the discussion of the parties' arguments below.

### III.   STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices the claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.    ANALYSIS

Plaintiff contends that the ALJ erred at step two by failing to find his mental health impairments and fatigue-related impairment to be severe and by later failing to incorporate any mental health limitation into the RFC.  (ECF No. 9, PageID ## 1141–44). The Commissioner counters that the ALJ properly considered the record as a whole, evaluated both the Plaintiff's subjective allegations and the opinion evidence in accordance with the appropriate regulations, and found that Plaintiff could perform work existing in significant numbers in the national economy. (ECF No. 11, PageID ## 1150–55).  Upon review, the Court finds that the ALJ properly considered Plaintiff's mental impairments at step two and in crafting the RFC.

### A.  Judicial Standard of Review

It is the plaintiff's burden to show the severity of his or her impairments.  *See James v. Comm'r of Soc. Sec.*, No. 1:25-CV-0468, 2026 WL 194098, at *8 (N.D. Ohio Jan. 26, 2026), *report and recommendation adopted*, No. 1:25-CV-468, 2026 WL 782192 (N.D. Ohio Mar. 18, 2026) (citing *Foster v. Sec'y of Health & Hum. Servs.*, 899 F.2d 1221, at *2 (6th Cir. 1990) (unpublished table decision) (further citations omitted)).  This burden, however, is not demanding.  An impairment is considered severe if it is expected to last more than 12 months and would more than "minimally" affect a claimant's work ability.  *See* 42 U.S.C. § 423(d)(1)(A); *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988) ("[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience.").

In assessing the severity of a psychological impairment at step two, an ALJ considers "four broad functional areas:" "[u]nderstand, remember, or apply information; interact with others;

concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3) ("Paragraph B criteria"). The degree of limitation is assessed using a five-point scale: "[n]one, mild, moderate, marked, and extreme." *Id.* at § 404.1520(c)(4). A "mild" limitation indicates that "functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited." *Id.* at § 404, Subpt. P, App. 1 § 12.00F2b. A "mild" limitation equates with a "nonsevere" limitation indicating no more than minimal effect on a claimant's work-related activities. *Id.* at § 404.1520(d). "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." *Id.* at § 404.1522.

But when some impairments are found to be severe at step two, the fact that others are not becomes "legally irrelevant." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020); *see also Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) (where the ALJ determines that a claimant has a severe impairment at step two of the analysis, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence"). Rather, the relevant question becomes whether the ALJ considered the "limiting effects of all [the plaintiff's] impairment(s), even those that are not severe, in determining [the plaintiff's] residual functional capacity." 20 C.F.R. §§ 404.1545(a)(2), (e); 20 C.F.R. §§ 416.945(a)(2), (e); *see also Pompa*, 73 F. App'x at 803 (finding harmless error when the "ALJ considered all of [plaintiff]'s impairments in her residual functional capacity assessment."); *see also Meadows v. Comm'r of Soc. Sec.*, No. 1:07-cv-1010, 2008 WL 4911243, at *13 (S.D. Ohio Nov. 13, 2008) ("[I]f an ALJ errs by not including a particular impairment as an additional severe

6

impairment in step two of his analysis, the error is harmless as long as the ALJ found at least one severe impairment, continued the sequential analysis, and ultimately addressed all of the claimant's impairments in determining his residual functional capacity.").

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from [his] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). When determining the RFC, the ALJ must evaluate several factors, including medical evidence, medical opinions, and the plaintiff's testimony. *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)). In doing so, the ALJ must resolve conflicts in the record. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). To that end, an ALJ "is only required to include in the residual functional capacity those limitations he finds credible and supported by the record." *Beckham v. Comm'r of Soc. Sec.*, No. 1:19-cv-576, 2020 WL 5035451, at *7 (S.D. Ohio Aug. 26, 2020) (quoting *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 170 (6th Cir. 2020)). And an ALJ is not required to adopt a medical opinion verbatim. *See, e.g.*, *Poe*, 342 F. App'x at 157 ("Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding.").

Finally, as it relates to a plaintiff's non-severe impairments, the regulations "require the ALJ to 'consider' the possible effect of a non-severe impairment on the [plaintiff's] capacity for work . . . . [but] there is no accompanying requirement that the RFC must then include restrictions reflecting a non-severe condition in the RFC." *Todd J. v. Comm'r of Soc. Sec.*, No. 3:22-CV-324,

2023 WL 6533824, at *6 (S.D. Ohio Oct. 6, 2023), *report and recommendation adopted*, 2024 WL 770903 (S.D. Ohio Feb. 26, 2024).

### B.  The ALJ's Step Two Analysis Was Supported by Substantial Evidence

For the following reasons, the Undersigned finds that the ALJ's decision at step two was supported by substantial evidence.

At step two of the analysis, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease, degenerative joint disease of the right knee, osteoarthritis of the left knee, hernia status post repair, diabetes mellitus with neuropathy and mild retinopathy, and obesity.  (ECF No. 7-2, PageID ## 39–40).  In analyzing whether Plaintiff had a severe mental impairment, the ALJ applied the Paragraph B criteria and concluded that Plaintiff's "medically determinable mental impairments do not cause more than minimal limitation in his ability to perform basic mental work activities and are, therefore, nonsevere." (*Id.* at PageID # 42).

Specifically, when analyzing the Paragraph B criteria, the ALJ discussed the relevant mental health records, including a psychological examination performed by Dr. Richard Sexton, on June 16, 2023, Dr. Janet Souder's review from November 23, 2022, and Dr. Matthew Wong's review from July 10, 2023.  (ECF No. 7-2, PageID ## 40–43).  The ALJ acknowledged that Plaintiff had a history of substance abuse, and was diagnosed with anxiety and depressive disorders, as well as post-traumatic stress disorder stemming from childhood abuse.  (*Id.* at PageID #40).  He discussed how Plaintiff completed a sober living program and received "some medication management for complaints of low mood and motivation, social withdrawal, irritability, fearful/compulsive thoughts, and poor short-term memory." (*Id.*).  The ALJ also summarized Plaintiff's testimony

8

regarding memory issues, social isolation, difficulties maintaining attention, concentration and pace, and his ability to live independently and perform activities of daily living such as light house and yard work, engaging in hobbies, and spending time with friends. (*Id.* at PageID 42–43).

The ALJ also summarized the relevant psychological medical record evidence when analyzing the Paragraph B criteria. For example, the ALJ discussed Dr. Sexton's opinion, who examined Plaintiff on June 16, 2023, and found his opinion to be persuasive. (*Id.* at PageID ## 40–41). The ALJ noted that Dr. Sexton's treatment notes reflected Plaintiff's appearance during the examination as "adequately dressed and groomed" and although he had a flat affect and an anxious and depressed mood, he nevertheless established a workable relationship with Dr. Sexton, maintained a cooperative attitude, good eye contact, and normal speech. (*Id.* at PageID # 41). The ALJ also noted that Dr. Sexton found no evidence of any thought content abnormalities, and likewise found Plaintiff to be alert and fully oriented with no evidence of confusion and his thought processes were well-organized. (*Id.*). Dr. Sexton opined that Plaintiff could perform simple arithmetic calculations involving single- and double-digit numbers and demonstrated no difficulty with hypothetical problems solving and judgment. (*Id.*). Dr. Sexton noted Plaintiff's attention span was only slightly impaired and estimated his intellectual functioning was low average. (*Id.*).

The ALJ further noted that despite Dr. Sexton's diagnoses of an unspecified depression disorder and substance abuse disorders in sustained remission, he "did not identify any significant functional mental limitations on the claimant's ability to work beyond the possibility of slight difficulty maintaining attention/concentration." (*Id.* at PageID # 41). Further, Dr. Sexton noted that Plaintiff reported his "chief complaint was physical problems." (*Id.* at PageID # 40) (citing

ECF No. 7-8, PageID ## 806–13). The ALJ concluded that Dr. Sexton's opinion evidence was consistent with Plaintiff's unremarkable mental status examination. (*Id.* at PageID #41). The ALJ likewise found that Dr. Sexton's opinion was consistent with other evidence contained in the medical record, such as the fact that Plaintiff's mental health treatment was mostly limited to medication refills that lessened his symptoms, normal mental status examination findings throughout the record, and Plaintiff's ability to perform activities of daily living. (*Id.*)

The ALJ also discussed Dr. Souder's and Dr. Wong's consultative examinations in conjunction with the Paragraph B criteria. Dr. Souder initially reviewed the record on November 23, 2022, prior to Dr. Sexton's evaluation. At that time, she found insufficient evidence in the file to assess Plaintiff's mental condition. (ECF No. 7-3, PageID ## 93–96). The ALJ conclude that Dr. Souder's assessment is "not persuasive in light of records submitted since the time of her review, specifically Dr. Sexton's examination report." (ECF No. 7-2, PageID # 41).

Finally, the ALJ discussed Dr. Wong's evaluation of Plaintiff's medical record, which was performed upon reconsideration on July 10, 2023, and took into consideration Dr. Sexton's evaluation. Dr. Wong based his review on the medically determinable mental impairments of anxiety and obsessive-compulsive disorders and depressive, bipolar and related disorders. (ECF No. 7-3, PageID # 109). Dr. Wong did not find that these impairments meet or medically equal any Listed impairment, finding mild impairment in all the "B Criteria" areas of the Listings. (*Id.*). Dr. Wong did not prepare a mental RFC. (*Id.* at PageID # 112).

The ALJ found Dr. Wong's opinion persuasive "as Dr. Wong's interpretation of Dr. Sexton's report also is consistent with objective medical evidence, which corroborates that

[Plaintiff] remains substance free and that his mood is stabilized with psychoactive medications monitored by his primary care provider [(citing to ECF No. 7-9, PageID # 1091)] offering little indication that said symptoms significantly interfere with [Plaintiff]'s functioning." (ECF No. 7-2, PageID ## 41–42); *see Emard*, 953 F.3d at 850–51 (finding substantial evidence supported an ALJ's nonsevere mental health finding when "medical records show that he responded positively to medical intervention").

In summary, the ALJ found only mild limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  Under the regulations, these mild ratings correspond to nonsevere impairments because they reflect no more than a minimal limitation in work-related functioning. Thus, the Undersigned finds no error with the ALJ conclusion that Plaintiff's "medically determinable mental impairments do not cause more than minimal limitation in his ability to perform basic mental work activities and are, therefore, nonsevere." (*Id.* at PageID # 41).

In reaching this conclusion, the Undersigned is not ignoring the contrary evidence relied upon by Plaintiff, such as his psychiatric medications and self-reports of more severe mental health concerns.  (*See* ECF No. 9, citing to ECF No. 7-7, PageID ## 552–61; 587; 968).  But the mere fact that Plaintiff was on medications to treat his psychological symptoms does not necessarily equate to a severe mental health impairment for purpose of a disability determination.  *See, e.g.*, *Carrelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 436 (6th Cir. 2010) (finding that use of psychotropic medications such as "Ativan, Lorazepam, Zoloft, Cymbalta, and Ritalin" were "not necessarily indicative of a severe mental impairment").  Indeed, here the ALJ did consider Plaintiff's use of

medications and found that they helped his symptoms. (*See* ECF No. 7-2, PageID # 41) (noting that Plaintiff's medications helped diminish his symptoms); (*see also* ECF No. 7-8, PageID # 808, Plaintiff indicating the medications "have helped his symptoms").

Additionally, much of the record evidence relied on by Plaintiff was his own subjective self-reported symptoms, not objective medical findings, which the ALJ appropriately discounted in his analysis when comparing those subjective symptomatic reports against the objective medical evidence and generally conservative treatment records. Thus, the ALJ did not err by not crediting Plaintiff's subjective, self-reported symptoms. *See Michael R. v. Comm'r of Soc. Sec.*, No. 2:22-CV-4117, 2023 WL 6160626, at *6 (S.D. Ohio Sept. 21, 2023) (finding no err when the ALJ failed to credit a medical opinion that was based on a plaintiff's subjective reporting of symptoms).

At bottom, because the Undersigned finds the ALJ's decision was supported by substantial evidence, contrary record evidence, absent more, does not warrant remand. *See Napier v. Comm'r of Soc. Sec.*, 127 F.4th 1000, 1007 (6th Cir. 2025) ("[A]s long as the ALJ's findings were, as here, supported by substantial evidence, we may not second-guess them, even if substantial evidence would support the opposite conclusion." (citation omitted)); *Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020 U.S. App. LEXIS 25360, 2020 WL 6882255, at *4 (6th Cir. Aug. 10, 2020) ("Even if the record could support an opposite conclusion, we defer to the ALJ's finding because it is supported by substantial evidence, based on the record as a whole." (internal citations omitted)).

Further, as discussed above, when as here, an ALJ determines that one or more impairments is severe at step two and proceeds with the sequential process, the ALJ's failure to find additional severe impairments at step two does not constitute reversible error. *See Maziarz v. Secretary of*

*Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987) (failure of Secretary to find that an impairment was severe was not reversible error because he found that claimant had other severe impairments); *Pompa*, 73 F. App'x at 803 ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence."). Because the ALJ reasonably found only mild limitations in each functional area and at least one other severe impairment, any failure to deem Plaintiff's mental impairments 'severe' at step two is not reversible error so long as the ALJ considered those impairments when formulating the RFC.

### C. The ALJ Did Not Err in Forming the RFC

With respect to the ALJ's RFC, Plaintiff contends that the ALJ erred by failing to include any mental health limitations. But upon review, the Undersigned finds no error.

Here, the ALJ stated that he considered "the entire record" when formulating the RFC, and further that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (ECF No. 7-2, PageID #44). Such statements have been found to be sufficient for purposes of considering a non-severe symptom when crafting an RFC. *See Emard*, 953 F.3d at 851 (finding sufficient an ALJ's statements that she "considered the entire record" and "all symptoms" when forming the RFC despite no specific mention of the nonsevere impairments at that step). Moreover, the ALJ had already performed a thorough analysis of Plaintiff's mental health conditions at step two, so it would be redundant to require another in-depth discussion during the RFC formation. *See Hobbs v. Bisignano*, No. 2:25-cv-00062-SCM, 2026 WL 672954, at *4 (E.D. Ky. Mar. 10, 2026) ("[I]t

makes sense to have a less thorough discussion of mental impairment at the RFC stage when—as here—it has already been thoroughly discussed at step two."). And in any event, the ALJ went further and specifically discussed Plaintiff's mental impairments, including the fact that Plaintiff took "psychoactive medication for anxiety and depressive-based symptoms" but ultimately discredited them in light of his previous discussion, opining that, although Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the symptoms of the types alleged," his " statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (ECF No. 7-2, PageID # 45).

Again, Plaintiff's arguments to the contrary fail to persuade. In Plaintiff's view, the ALJ's failure to include any psychological limitation in the RFC constitutes error. But although the regulations require the ALJ to "consider" the possible effect of a non-severe impairment on Plaintiff's capacity for work, which the ALJ did here, there is no accompanying requirement that the RFC must then include restrictions reflecting a nonsevere condition in the RFC. *Caudill v. Comm'r of Soc. Sec.*, No. 2:16-cv-818, 2017 WL 3587217, at *6 (S.D. Ohio Aug. 21, 2017), ("Contrary to Plaintiff's apparent contention, the ALJ's determination that she had some mild impairment does not *require* inclusion of mental limitations into the RFC."), *report and recommendation adopted*, 2017 WL 4222983 (S.D. Ohio Sept. 21, 2017). Indeed, "[c]ourts in this circuit have routinely rejected the same argument now advanced by Plaintiff." *Chidsey v. Kijakazi*, No. 1:20-CV-01858, 2022 WL 4599195, at *8–9 (N.D. Ohio Sept. 30, 2022) (citing cases); *see also Plotkowski v. Comm'r of Soc. Sec.,* No. 2:20-CV-12011, 2022 WL 413371, at *6–7 (E.D. Mich.

14

Jan. 18, 2022), *report and recommendation adopted*, 2022 WL 407079 (E.D. Mich. Feb. 9, 2022) (citing additional cases). Here, the Undersigned finds that the ALJ properly considered Plaintiff's nonsevere mental impairments and thoroughly explained the grounds for the RFC determination.

Finally, it is worth noting that Plaintiff does not point to any record evidence of specific functional limitations needed as it relates to his mental health impairments and symptoms. *See, e.g.*, *Angela K. P. v. Comm'r of Soc. Sec.*, No. 3:24-CV-272, 2025 WL 1564283, at *6 (S.D. Ohio June 3, 2025), *report and recommendation adopted*, No. 3:24-CV-272, 2025 WL 1827881 (S.D. Ohio July 2, 2025). Instead, Plaintiff just contends, without record support, that "any mental health limitation would likely eliminate semi-skilled work[2] and thus, direct a finding of disabled." (ECF No. 9, PageID # 1142). But Plaintiff does not challenge the record-based evidence relied upon by the ALJ or provide specific limitations that were disregarded. As such, the Undersigned finds that the ALJ's decision was supported by substantial evidence.

## VI. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore

---

[2] Plaintiff also adds in as an aside that his past employment on a part-time basis barely met the earnings required to constitute substantial gainful activity. (*Id.*) Plaintiff, however, failed to develop this argument in a meaningful manner, and thus, the Undersigned finds it waived. *See McPherson v. Kelsey*, 125 F.3d 989, 996-97 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (internal quotation marks and citations omitted)). But in any event, when making this argument, Plaintiff concedes that his past employment *did* meet the threshold, and having otherwise found that the ALJ did not err in finding the mental impairments to be nonsevere, the Undersigned finds this argument unpersuasive. Further, substantial gainful activity can include work done on a part-time basis, and Plaintiff does not otherwise contend that the ALJ erred in applying the regulations. *See* 20 C.F.R. § 416.972(a) ("Substantial work activity is work activity that involves doing significant physical or mental activities. . . . [W]ork may be substantial even if it is done on a part-time basis . . . .").

15

**RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED,** and that the Commissioner's decision be **AFFIRMED.**

## VII.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816*,* 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . ." (citation omitted)).

**IT IS SO ORDERED.**

16

*/s/ S. Courter M. Shimeall*
**S. COURTER M. SHIMEALL**
**UNITED STATES MAGISTRATE JUDGE**

17